## WEEKS *v.* HEURICH.

BUILDING REGULATIONS; MUNICIPAL CORPORATIONS; INJUNCTION; SPECIAL DAMAGE; PARTIES.

1. A building regulation authorizing the location of a public garage "upon property fronting upon a public alley" should be construed to apply to such property only when the rear does not front upon a street or alley, where other provisions in the regulations relate to public garages upon residence streets or upon business streets where the rear of the property opens upon a street or alley.

2. A building regulation restricting the erection of public garages upon residence streets applies whether the garage opens into an alley at the rear of a lot facing upon a residence street, or opens onto the street itself.

3. Municipal authorities are without power so to modify a building regulation applicable generally to the residence and business sections of the city as to convert it into an agency for the granting of special privileges.   (Citing *Berry* v. *District of Columbia,* 32 App. D. C. 96.)

4. The power of the municipal authorities of this District to grant a permit for the establishment of a public garage attaches only when the requisite number of property owners within the prescribed radius, as provided by the building regulations of the District, have given their consent.

5. A property owner seeking, in his individual capacity, to obtain an injunction restraining the erection of a public garage on neighboring property, is only required to show that he will sustain special and irreparable damage not sustained by the general public, and need not show that he will be damaged specially and irreparably to an extent not sustained by the other property owners within the prescribed radius within which the consent of property owners must be secured.

6. Where the consent of the property owners in the vicinity is made by law a condition precedent to the right to establish an industry therein, any attempt to establish the industry without such consent may be enjoined at the instance of property owners within the prescribed radius.

7. Such special and irreparable damage as will entitle a property owner to invoke injunctive relief is prima facie shown by averments that the proposed establishment of a public garage and repair shop but 30 feet from his premises will, by reason of the constant noise and traffic incident thereto, and the use and storage of large quantities of highly explosive combustible materials, constitute a nuisance and detriment to him and to his property, and lessen its safe and comfortable enjoyment, and permanently depreciate its value.

8. That a taxicab company had expended large sums of money to establish a public garage before the institution by a neighboring property owner of a suit for an injunction will not preclude relief, where the company failed to pursue the method of procedure prescribed by the building regulations to obtain a legal permit, and the bill was filed within a few days after the permit was granted.

9. One in possession and owning the fee of property may maintain a suit to enjoin an alleged nuisance specially detrimental thereto, without joining as a party plaintiff one who is the equitable owner of an interest in the property.

10. To a suit in equity to enjoin the establishment of a public automobile garage, to the proprietors of which the building inspector had granted a permit, after the District Commissioners had attempted to amend the regulations so as to permit of its establishment, the inspector, the Commissioners, and the assessor are proper, if not necessary, parties.

No. 2445.   Submitted December 3, 1912.   Decided February 25, 1913.

HEARING on an appeal by the complainant from a judgment of the Supreme Court of the District of Columbia, sitting as an equity court, dismissing a bill filed to restrain the defendants from establishing a public garage on a residence street.

Reversed.

The COURT in the opinion stated the facts as follows:

Appellant (Hiram B. Weeks), plaintiff below, filed a bill in the supreme court of the District of Columbia, seeking an injunction to restrain the several defendants (Christian Heurich and Augustus P. Coppes, trustees; the Commissioners of the District of Columbia, Cuno H. Rudolph, John A. Johnston, and W. V. Judson, a municipal corporation; Morris Hacker, inspector of buildings; the Terminal Taxicab Company, a corporation; and the Davis Construction Company, a corporation; and William A. Richards, assessor of the District of Columbia), from establishing a public garage on a residence street in the city of Washington.

The averments of the bill substantially are, that plaintiff is the owner of house No. 1918 N. street, northwest, which he occupies as a residence. Immediately around the corner, in the same block, on Twentieth street, defendants Heurich and Coppes, trustees, owned a certain building, No. 1229–1231 Twentieth street, fronting and opening on said street, at one time used as a brewery, but long since abandoned as such, and which was vacant and unoccupied at the time of plaintiff's purchase and occupancy of his residence in 1909. The south line of plaintiff's property is 30 feet from the north line of the brewery building. Prior to June 7, 1910, Heurich and Coppes, through their agents, agreed to sell the property to the Terminal Taxicab Company, provided a permit could be obtained from the city authorities to convert the building into a public garage and auto livery stable and repair shop. Being situated on a residence street, before the property could·be converted into a public garage, under the ordinance in force, the consent of the

owners of 75 percentum of the property within a radius of 200 feet of the proposed structure had to be procured.

The consent of a sufficient number of property owners within the prescribed radius could not be obtained to authorize the issuance of the permit. On June 7, 1910, the vendor and vendee, through their agents, made application to the District Commissioners to change the regulation and reduce the required percentage of consenting owners to 50 percentum. A hearing was set for June 17th (inadequate notice of which is alleged to have been given the property owners interested), which was attended by representatives of the vendor and vendee, the agents of the former stating that the reason for the desired change of the law was to enable them to consummate the proposed sale.

It is also averred that on July 25, 1910, the agents of Heurich and Coppes applied to the building inspector of the District for a permit to conduct a garage, auto livery and machine shop on the premises in question as an alley garage, purporting to inclose the consent of sufficient property owners within the prescribed radius for this purpose, and asking the privilege of later furnishing the consent of an additional number sufficient to justify the granting of a permit for a residence street garage. On the following day a permit was issued to Heurich and Coppes to convert the building into a public alley garage, and a second permit "to install 5, 8, and 15 h. p. motors, machinery, and 50 h. p. boiler for auto repair on said property; also 2 lathes, 2 shapers, 2 grinders, 1 forge, 3 motors, all to comply with the regulations." Shortly thereafter the deed was delivered by Heurich and Coppes, trustees, to the Terminal Taxicab Company.

It is also averred that both before and after the meeting of June 17, 1910, plaintiff, through members of his family, occupying the residence with him, protested to the Commissioners and inspector of buildings of the District of Columbia against the issuance of any permit or permits whatever authorizing the establishment of said garage; but that "notwithstanding the protests thus made in complainant's behalf, and in disregard of his rights, and in violation of law, the facts herein-

of the 14th Amendment of the Constitution of the United States, and therefore no action of any kind could be founded upon its violation. *Omaha Gas Co.* v. *Withnell,* 78 Neb. 33, 8 L.R.A.(N.S.) 978, and cases in note therein; *Laundry Ordinance Case,* 7 Sawy. 526; *Yick Wo* v. *Hopkins,* 118 U. S. 356, 30 L. ed. 220; *Ex parte Sing Lee,* 96 Cal. 354; *St. Louis* v. *Russell,* 116 Mo. 248; *St. Louis* v. *Howard,* 119 Mo. 41; *Tilford* v. *Belknap,* 126 Ky. 244; *Dobbins* v. *Los Angeles,* 195 U. S. 223; 2 Dill. Mun. Corp. § 695c. p. 1061 and note 1; *United States* v. *Richards,* 35 App. D. C. 540; *Strasburger* v. *Commissioners,* 5 Mackey, 389; *McFarland* v. *Miller,* 18 App. D. C. 554; *Phillip* v. *Denver,* 19 Colo. 179, 184.

2. A permit issued by the duly authorized authorities and once acted upon cannot be revoked. *Buffalo* v. *Chadeayne,* 7 N. Y. Supp. 501; *Dainese* v. *Cooke (Dainese* v. *Public Works),* 91 U. S. 580, 23 L. ed. 251; *Lowell* v. *Archambault,* 189 Mass. 70, 1 L.R.A.(N.S.) 458; *Hutchins* v. *Munn,* 22 App. D. C. 88.

3. The garage was not a nuisance *per se. Stein* v. *Lyon,* 91 App. Div. 593; *Diocese of Trenton* v. *Toman,* 70 Atl. 606, 611; *Sherman* v. *Levingston,* 128 N. Y. Supp. 581, 583, 585; *Shivery* v. *Streeper,* 24 Fla. 103; *Bonaparte* v. *Denmead,* 108 Md. 174, 69 Atl. 697; *St. James Church* v. *Arlington,* 36 Ala. 546; *Albany Christian Church* v. *Wilborn,* 112 Ky. 507; *Flint* v. *Russell,* 5 Dill. 151, Fed. Cas. No. 4,876; *Kaiser* v. *Lovett,* 85 Ind. 240; *Curtis* v. *Windslow,* 38 Vt. 690; *Hyden* v. *Terry,* 32 Ky. L. Rep. 1198; *Stilwell* v. *Buffalo Riding Academy,* 4 N. Y. Supp. 414; *Kirkman* v. *Handy,* 11 Humph. 406, 54 Am. Dec. 45; *Harrison* v. *Brooks,* 20 Ga. 537; *Rounsaville* v. *Hohlheim,* 68 Ga. 668.

4. The erection of a building which will not of itself constitute a nuisance will not be enjoined because the use to which it is designed to be put would constitute a nuisance. *Adams* v. *Michael,* 38 Md. 123, 125; *Dalton* v. *Cleveland, C. etc. R. Co.* 144 Ind. 121; *Duncan* v. *Hayes,* 22 N. J. Eq. 25; *Rouse & Smith* v. *Martin,* 75 Ala. 510, 513, *et seq.; Pfingst* v. *Senn,* 94 Ky. 556, 560 *et seq.* 21 L.R.A. 569; Wood, Nuisances, §§

789, 790; *Windfall Mfg. Co.* v. *Patterson,* 148 Ind. 414, 418, 37 L.R.A. 381.

Mr. *Edward H. Thomas,* Mr. *G. E. Hamilton,* Mr. *J. W. Yerkes,* and Mr. *J. J. Hamilton* also appeared for the appellees.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

The averments of the bill must be accepted as true, since the request of the court to hear the case as on demurrer was acquiesced in by counsel on both sides. Judgment was entered without objection to the manner of trial, and it is too late now, for the purposes of this appeal, to complain. Thus, the case, stripped of all issues of fact, leaves only the naked question of law, whether or not, in the light of the admitted averments of the bill, plaintiff is entitled to the relief sought.

The validity of the provisions of the building regulations of the District (160b) relating to the establishment of public garages was upheld in *United States ex rel. Early* v. *Richards,* 35 App. D. C. 540. While not strictly essential to the disposal of this case, since the permits are admitted to be void, we think, in view of a probable trial on the merits, it is important to interpret the regulation in the light of the action taken. At the time of the issuance of the first permit, sec. 160b provided: "No automobile or locomobile livery stable or building wherein automobiles or locomobiles are to be stored, put up, or kept for hire, or otherwise, shall be erected, located, established, or maintained upon any residence street or avenue in the District of Columbia without the written consent of the owner of 75 per centum of the property within 200 feet of the proposed establishment (excepting property used for purposes requiring consent of property owners); strictly private establishments of this character, located not less than 50 feet back from the front building line of the lot, will be exempted from this regulation [or if located in a fireproof compartment in a dwelling]. No public automobile or locomobile livery stable, or building wherein automobiles or locomobiles are to be stored, put up, or

of the property owners within the radius from three fourths to two thirds. There is certainly no distinction from the standpoint of public policy. In point of convenience, a garage can be operated about as successfully from the alley end of a lot as from the street end.

The regulation applies generally to the residence and business sections of the city, and the municipal authorities are without power so to modify it as to convert it into an agency for the granting of special privileges. *Berry* v. *District of Columbia,* 32 App. D. C. 96. Neither can anyone proceed lawfully to establish a public garage without a legal permit from the proper authority, which can be lawfully issued only when the requisite number of property owners within the prescribed radius have given their consent. The municipal authorities have no power or option in the matter until the consent of the required number of property owners has been secured. It is then, and then only, that their power to act in the premises attaches.

It is urged by counsel for defendants that, inasmuch as plaintiff is not here representing the other property owners within the prescribed radius, he must show, as a condition for relief, that he will be damaged specially and irreparably to an extent not sustained by the other property owners within the radius. This contention is unsound. Plaintiff, in his individual capacity, is only required to show that he will sustain special and irreparable damage, not sustained by the general public. If plaintiff had associated with him a sufficient number of property owners within the prescribed radius to prevent the procuring of the required assent for the establishment of the garage, the situation would be different. It would not then be a case where the rights of a third party intervene. It would be a direct proceeding. They would be in the position of protecting their property rights as guaranteed by the regulation,—a right in the face of which the municipal authorities would be powerless to act, until, as a condition precedent, the consent of the requisite number of property owners had been secured. In that case the right of action would have depended not on the

question of damage, but upon the legal right to establish a garage.

Where the consent of the property owners in the vicinity is made by law a condition precedent to the right to establish an industry therein, any attempt to establish the industry without such consent may be enjoined by the property owners within the prescribed radius. In *Roberts* v. *Easton,* 19 Ohio St. 79, it was sought to restrain the building of a street railroad in the city of Cincinnati. The statute required that a permit should be obtained from the city council before proceeding, and that, as a condition precedent to the issuance of the permit, the consent of a majority of the property owners along the street, where the proposed road was to be constructed, should be obtained. Plaintiff, representing a majority of the property owners on the street, averred that such consent had not been obtained. It was objected that they were not in position to complain. The court held that the permit issued by the council was totally void for the lack of consent by the property owners; that no presumption as to its validity attached, since the council was without power to act at all until the proper consent had been obtained; that the proceeding was direct, and not collateral; that the statute itself was sufficient notice to the parties to forbid its innocent violation, and that no action of the council, in the absence of the requisite consent, could "defeat the rights secured by law to the owners of property on a street proposed to be occupied by a street railroad." Summing up the case, Judge Day, speaking for the court, said: "The remaining question relates to the right of the plaintiff below to bring his suit, and to the relief sought thereby. He sued on behalf of himself and others, claiming to be a majority of the owners of property interested, whose assent was essential to the legality of the proceedings complained of. The action was not based upon the statutory right of a citizen to restrain the city authorities from an abuse of their powers; nor exclusively on the idea that the proposed construction was a public nuisance, that worked some special injury to the plaintiffs. But the legislature, in forbidding the authorities having the control of the

tiff's damage from that which would be sustained by the general public.

It is insisted that defendant, the taxicab company, has expended large sums of money upon this establishment before the institution of this proceeding; hence, according to a familiar rule, equity cannot be invoked to prevent that which has already been accomplished. The averments of the bill do not support the assertion. But even if it be true, defendants are charged with knowledge of the ordinance and the method of procedure prescribed therein, and if, instead of proceeding in the manner prescribed by the regulation, they sought to circumvent it, they are in poor situation to complain. The earliest date defendants were in position to proceed, even under color of right, was the date of the issuance of the second permit; and since the bill was filed within a few days thereafter, it is hardly possible that they could have made much progress in the reconstruction of the building from a street to an alley frontage and otherwise, or toward the instalation of the machinery essential to the use intended. Besides, it is not the building, but its contemplated use, which plaintiff seeks to enjoin. In the case of *Pennsylvania* v. *Wheeling & B. Bridge Co.* 9 How. 647, 654, 13 L. ed. 294, 297, the court said: "If the defendants proceed in the meantime [between bill and hearing] to complete the bridge, they will gain no equity thereby; but if judgment be obtained against them, they will be compelled to abate the nuisance at their own expense." Even where a structure has been completed in violation of law, equity will compel its removal. *McHugh* v. *Louisville Bridge Co.* 23 Ky. L. Rep. 1546, 65 S. W. 456.

Our attention has been called to the recent decision of the Supreme Court of the United States in the case of *Eubank* v. *Richmond* [226 U. S. 137, 57 L. ed. —, 42 L.R.A. (N.S.) 1123, 33 Sup. Ct. Rep. 76]. In that case, the constitutionality of an ordinance of the city of Richmond was involved. A statute of Virginia authorized city councils, among other things, in their discretion "in particular districts or along particular streets to prescribe and establish building lines." By virtue

of this act the city council passed an ordinance providing that upon request in writing of the owners of two thirds of the property abutting on any street, the committee on streets shall establish a building line on the side of the square on which the property fronts. The committee was vested with discretion to establish the line not less than 5 feet nor more than 30 feet from the street line, but as to the establishment of a building line the committee was without discretion.

Eubank was granted a permit to erect a house on a lot owned by him. Before construction was commenced, but after the material for the house had been assembled, the street committee, on petition of two thirds of the property owners within the square, and on the side of the street on which his property was situated, established a building line 3 feet back of the proposed front line of the house. He disregarded the action of the committee, was arrested and fined $25. From a decision of the supreme court of Virginia upholding the judgment, the case was taken to the Supreme Court of the United States, where the judgment was reversed, on the ground of the unconstitutionality of the ordinance.

The court, referring to the ordinance, said: "It leaves no discretion in the committee on streets as to whether the street line shall or shall not be established in a given case. The action of the committee is determined by two thirds of the property owners. In other words, part of the property owners fronting on the block determine the extent of use that other owners shall make of their lots, and against the restriction they are impotent. This we emphasize. One set of owners determine not only the extent of use, but the kind of use which another set of owners may make of their property. In what way is the public safety, convenience, or welfare served by conferring such power? The statute and ordinance, while conferring the power on some property holders to virtually control and dispose of the property rights of others, creates no standard by which the power thus given is to be exercised; in other words, the property holders who desire, and have the authority to establish the line may do so solely for their own interest or even capriciously.

and acts in behalf of all others who are or may be injured; nor is there [any] more necessity for joining with his partners in the prosecution than there is for his joining in the suit any other person as complainant, who has sustained injury. Gibbons, Dilapidation, 402." Here the fee is in plaintiff, and he is in possession. The interest of Roberts, as disclosed in the bill, would seem to amount to nothing more than an implied trust. If the decree is granted, Roberts, as all other members of the public injured by the alleged nuisance, will be benefited. If the bill is dismissed, he will stand in the same relation as other members of the public who are not parties plaintiff. The only question before us is whether plaintiff is in position to maintain the present suit. He occupies such a position, and it is of no concern whether he elects to join with other persons similarly injured or not. The title to the property is not in issue; if it were, Roberts might be a necessary party, but the only issue here is the extent of the injury to plaintiff.

It is urged that the inspector of buildings, the Commissioners of the District, and the assessor should not have been made parties defendant. It is unnecessary to discuss this contention, since, on the face of the bill, they are at least proper, if not necessary, parties.

The decree is reversed with costs, and the cause is remanded for further proceedings not inconsistent with this opinion.

*Reversed.*